al. Council, the Council that's leaving, I appreciated you shaking hands. That's a very nice thing to do, and I applaud it. If you think we're going to read at that distance, you'd better bring that easel up closer. I still can't read it. You don't have a handout? Oh, I mean, okay. I'll get it. I would like to reserve five minutes, Your Honor. Well, let me just call the case, number 1741013, Mabry v. Petrohawk Energy, and you are Mr. Jordan? I am. All right. Max Jordan from Lafayette, Louisiana. I represent Mr. Mabry, and this is a clash of whether or not state law of Louisiana should apply or whether or not the law of Texas should apply. And Mr. Mabry was working on a drilling rig that was contracted. The owner of the drilling rig was an Oklahoma company, and the operator of the drilling rig was a Delaware company whose principal business was in Oklahoma, but they were going to And so this drilling rig, H&P 395, came out of the box from the fabrication yard, and its first well was in Elm Grove, Caddo Parish, Louisiana. And it drilled there in various locations. It's a mobile drilling rig for a little over two years, and I guess the play ran out or whatever, and they decided to And it was during that time in Texas that Mr. Mabry was hurt on this drilling rig. So we filed a lawsuit. In Texas. In Texas, and kind of at the last minute, and that's my 2020 not-so-good foresight. And then during discovery, we learned of this drilling contract, and the drilling contract applies to the contractor, the driller, the subcontractors, the employees of the subcontractors, has insurance provisions. I can't see very well. I can hear. So if you didn't have to holler, that would help me. I'll tone it down. I appreciate your enthusiasm, but it's a little loud. I'm sorry. That's all right. And so Mr. Mabry, who is from Louisiana, is working on that drilling rig in Texas after he gets moved from Louisiana to Texas, and he gets hurt. And we filed a lawsuit there, and as you know, we filed a lawsuit in January.  And shortly thereafter, the Texas law generally governs, and then we find out that, well, maybe Texas law doesn't govern, because literally. When you say, then we find out, we're talking 14 months later. Talking one year after we filed a lawsuit. Yes, sir. We filed a lawsuit in January. And then we got the discovery in January. And shortly thereafter, we filed a motion to strike the Texas law defenses and to apply Louisiana law. Now, we think Louisiana law applies because Texas law says we favor choice of law provisions in contracts. So Texas law says, look to the contract. And the contract has paragraph 18, the choice of law provision, that says, and I'll read it, says this contract shall be construed, governed, interpreted, enforced, and litigated, and the relations between the parties determined in accordance with the laws of Louisiana. This is the drilling contract, right? That's the drilling contract. Where does it say anything? How do you get to the legal question whether the subcontractor on Mudd is a, much less his employee, is a third-party beneficiary of that? Because the contract itself talks about subcontractors. And it says it requires the subcontractors to have insurance, has provisions in the drilling contract that pertain to personal injuries of employees or subcontractors or other contractors. And so under Louisiana law, this contract would clearly contain stipulations pour a tree, benefit of a third party. Mr. Mabry was contemplating as a third party, because it has the provisions in there about subcontractors, their employees, personal injuries. There's insurance certificates for not just workers' comp, but for some other provision, general liability, broad form of personal injury provisions. Those have to be talking. And the contract itself has multiple paragraphs that deal with how to apply this contract. Do you agree that under Texas law he would not be a third party beneficiary? I absolutely agree that under Texas law he would not be a third party beneficiary. Okay. But I firmly believe that under Louisiana law that he would be a third party beneficiary. And so we've got the clash. Now, which one? My opponent argued, well, there just wasn't enough relations with Louisiana to apply Louisiana law. Well, the first well was Louisiana. It was drilling in Louisiana longer than it ever drilled in Texas. That has nothing to do with Mr. Mabry. He's employed by the MUD subcontractor. He's employed by the MUD subcontractor, who is also governed by this drilling contract, by the absolute terms of that drilling contract. It says that the subcontractors are subject to, to me, that's the constitution of what goes on under the drilling rig. You can have all kinds of other little master service agreements and all this other kind of stuff going on, but everybody that, and it says it's exclusive, all work, all work done on that drilling rig is to be governed by that contract. Now, to me, there's no question Mr. Mabry was performing work on that drilling rig. I mean, he was hired by the operator. He was doing the MUD work. It was part of the component that the operator was responsible for. And yet, the trial judge used Texas law to throw out his claims against the operator, which would not have happened if I had had 2024 sight instead of 2020 hindsight and filed a lawsuit in Louisiana instead. But I didn't. I'm sure you made a good faith determination at the time. 39 years, I always hope I make good faith determinations. Sometimes you just miss it. You know, 2020 hindsight says, Jordan, you should have filed a lawsuit in Louisiana, and if they didn't like you there, they'd have thrown you out. I mean, you have choice of law in Louisiana too, and is it absolutely clear that Louisiana law would have applied to the drilling of the well in Texas? Yes. Well, you can say that. I don't know. They use the most significant relationship test too. But they also favor choice of law provisions in contracts, just like Texas does. And given the fact that this mobile drilling rig came out of the box and was opened up near Elm Grove, Louisiana, and it's no wonder it operated there. All the witnesses. I don't know where that rig is now. It could be in New Mexico. Well, I mean, the law of drilling doesn't follow the rig, does it? I think that's a new standard. I mean, that rig could go to Montana, or you could put that rig on a barge and take it down toward Venezuela or something. You could. But that drilling contract, everybody working on that, everybody that works on that drilling contract is subject to that drilling contract, whether they're a subcontractor or whoever they are, by the terms of that contract. And so if they take it to Venezuela, then somebody, some lawyer is going to look at that contract and says, oh, we're supposed to be upon Louisiana law here. And Louisiana law is clear that if, and I'm interpreting the contract and construing the contract in accordance with Louisiana law. That's what I'm doing. And so under the terms of that contract, when I apply Louisiana law, then there is no chapter 95 to completely gut Mr. Mabry's cause of action. It's a straight-up negligence, comparative negligence in Louisiana. It has a, we have special premises liability provisions. And unfortunately, when I moved in the trial court to strike the Texas law defenses and to apply Louisiana law, the trial judge used Texas law and he says, your client's not a third-party beneficiary. And I said, but he is a third-party beneficiary if we go by the terms of the contract and we construe that contract and interpret that contract in accordance with Louisiana law, which is exactly what the contract tells us to do. Now, we can not honor that portion of the contract and strictly go by straight-up eerie principle that if you file a lawsuit in one state, that's the law you apply, et cetera. But no telling how many of these contracts are out there. They, these are two Oklahoma companies. They could have said, put in the contract, well, we're going to have our first well in Caddo Parish, Louisiana, but we want to apply, we want to apply Oklahoma law. They could have done that. They could have said, well, two Oklahoma companies and if we have 20-20 hindsight, we think that that play may run out in Louisiana and we're probably going to move it to Texas. They could have put Texas law in there, but they didn't. They put Louisiana law. And we're not just supposed to apply the contract. Twice a law provision says we're supposed to interpret and construe the contract in accordance with Louisiana law. And if you interpret and construe the contract in accordance with Louisiana law, then Mr. Mabry becomes a third party beneficiary under our stipulation poor or tree line of cases that I cited in my brief. And we got a straight-up negligence case with a premises liability aspect and we just think that, so if this court breathes life back into my case, as I hope that they will, that you will, in addition, there's the issue of got a rig and you don't know where it is. It's really not that important. It's where are the witnesses. And I said in my brief, we've got almost all of the witnesses still live in north Louisiana. They acquired all these employees while they were drilling up in Caddo. And so the company man, Mr. Latour, he lives in Ville Platte. Mr. Ganey, the drilling supervisor, he lives in Ola. And then, you know, in my brief, I said, these are all the witnesses that got disclosed during the initial disclosures. They all live in Louisiana. Well, we didn't know that at the time we filed the lawsuit and our subpoena. We didn't know. Stephen had only been working for that company for six months. He wasn't buddy-buddy with the employees, so we didn't know where those crew members lived. We only learned that they lived in Louisiana after we filed the lawsuit and got the information. You couldn't tell by the accent? What's the difference between Louisiana and Texas? Well, north Louisiana, it's more like Texas. Than south Louisiana. We live in south Louisiana. Ville Platte's south Louisiana. Ville Platte is. And Raymond Latour had the accent, I'll promise you. But Mr. Ganey had a totally different accent. He sounded like he was from southern Arkansas. And so we would ask this court to overturn those summary decisions. Ms. Slay. Pardon me? Yes. May it please the court, opposing counsel. There's three primary issues on appeal today. If the court would like me to skip over some of these, please let me know. I'm just going to address them in the order that we've addressed them in our brief. There was no error regarding the direct action claims by the trial court because the issues were not properly preserved by Mr. Mabry on appeal. Mabry failed to preserve the issue of allowing the plaintiff to name insurance companies as defendants in the amended complaint. There were actually only two mentions of this direct action statute on the record at all. One was in his reply to HPIDC's no evidence motion for summary in an initial conference with Judge Hughes. I basically indicated that plaintiff's filings and things he had been saying had suggested that he appeared to be planning on filing a lawsuit against the insurers. As you've seen in the briefing, the court indicated that was not going to be possible for him to do because of res judicata issues. But then Mr. Mabry did not, Mr. Mabry's attorney did not further go on to take the appropriate action to preserve this issue on appeal. There was no submission of any kind of amended complaint. There was no motion filed on this issue. There was no memorandum or case law cited and it has not been, it was not adequately brought up before the trial court. If there was any error, which we argue there was not because it was not adequately preserved, there was, if there was any error it was harmless because in order to sue a liability insurer directly under the Louisiana direct action statute as plaintiff, or Mabry has indicated he would want to do, the accident or injury either must have occurred in Louisiana, which it's clear from the record it did not, or the policy has to have been written or delivered in Louisiana. And there's no evidence in the record that that occurred either. The only evidence on the record that we have relating to the insurance policies was a certificate of insurance for HPIDC. Moving on to the next issue, the trial court also did not abuse its discretion when it denied Mabry's motion to transfer Venue. That issue has actually already been addressed by this court and it's September 23rd, 2015 mandamus denial of the initial issue. The court has already addressed this issue. Moreover, the movement, Mr. Mabry would have had the burden at the trial court level to prove that the trial court abused its discretion and at the appellate level, at this level, the denial of the motion to transfer Venue should only be overturned if it could show that the district court failed to consider the facts. We've set forth those factors that the court must weigh at the trial court level when determining whether a motion to transfer Venue should be granted or not. I'm not going to go through them here, but I think it's pretty clear that the court did address the majority of those factors, particularly the convenience of the witnesses. The court addressed that. The operative events in the issue, it was clear from the record that the court considered that the incident occurred on a Texas site. It was a Texas accident with a Texas oil and gas rig. The court also considered the convenience of the parties. Again, going back to the issue of Venue, Mr. Mabry made the choice to file suit in Texas. He chose the Venue and was okay with it for over 17 months of litigation before filing a motion to transfer Venue. The motion to transfer Venue was actually only filed when it became clear that Chapter 95 was going to be a huge hurdle for him in Texas, under Texas law. The second grounds for the motion to transfer Venue that we argued at the trial court level as being inappropriate was that it was untimely. The Fifth Circuit has held that a motion to transfer Venue should be made with reasonable promptness. I think the case law is clear that 17 months would not be reasonably prompt. A transfer would clearly result in more difficulty, delay, and cost for both parties at this point. I'm going to address the third-party beneficiary issue last. I think that issue is subsumed under the summary judgment issue. There were two separate summary judgments filed, as the court is aware. The summary judgment is to BHP, and then the summary judgment is to HPIDC. BHP was the operator. HPIDC was the driller. I think Mabry has waived the issue as far as the third-party beneficiary analysis is concerned as it pertains to BHP. Specifically, plaintiff's response to BHP's MSJ at the trial court level does not contest the applicability of Chapter 95, i.e., the choice of law. In fact, Mabry's response to the MSJ as to BHP only addresses the control and knowledge prongs of the statute, not that it does not apply. He does state briefly that because BHP was not a property owner, it does not apply, but he does not argue at any point in the response to the MSJ that Mabry was a third-party beneficiary to the contract. Now, for the first time on appeal, Mabry is now asserting that Chapter 95 does not apply because of this choice of law provision in the day work contract. As Mr. Mabry did not brief the arguments on Chapter 95 and Texas law, I think he's waived it because there's case law, federal court case law, that says that failure to adequately brief an issue on appeal constitutes waiver of that argument. That's the Procter & Gamble case. It's a Fifth Circuit 2004 case. Even looking to—so the issue is addressed in his response to HPIDC's motion for summary judgment, so I'm going to address the third-party beneficiary analysis in that context as well. I think Texas law is clear that you would look to the intention of the contracting parties to determine whether a third party can enforce a contract. If there's any reasonable doubt as to whether or not the parties to a contract have intended to create a third-party beneficiary with enforceable contract rights, the claim of the third party fails. There's actually a presumption in Texas. It's South Texas Water Authority v. Lomas 223 SW 3D 304. It's a Texas Supreme Court— He just conceded they're not a third-party beneficiary under Texas law. Okay. I think under Louisiana law, it's clear that they also are not a third-party beneficiary, but I do want to say one thing. There's another case. It's Ancona v. HPIDC 2018 Westlaw 1146394. It's a March 1, 2018 opinion out of the Western District Courts, Judge Rodriguez's opinion. It looks at this identical contract, and I think that's the issue here. These types of drilling contracts are voluminous. They exist, and the exact same contract was analyzed in this Ancona opinion. The language of the contract never identifies either Mabry or Stage 3 as an intended beneficiary. And I think the case law on that is the same whether you're looking at Texas or Louisiana law. The term day work in the contract actually states that HPIDC shall furnish equipment, labor, and perform services for a specified sum per day under the direction and supervision and control of BHP. That provision that Plaintiff has highlighted only identifies BHP and HPIDC and any other party engaged by BHP to direct drilling operations. That does not apply to Stage 3. Stage 3 was not employed to direct drilling operations. Mabry has presented no evidence that his employer was engaged by BHP to direct drilling operations on the property. Plaintiff's employer was only engaged by BHP to provide services under a separate agreement, which is in the record. It's the master service agreement between Stage 3 and BHP. The day work contract also states that BHP shall be solely responsible and assumes all liability for the consequences of operations by both parties while on a day work basis. And then there's the key, other than those specifically assumed by HPIDC. So this language actually only indicates how BHP and HPIDC, the two contracting parties, may hold each other liable under the terms of the day work contract. There's no evidence in the record that Mabry or Stage 3 were intended beneficiaries. And again, I think that analysis is the same under Texas or Louisiana law. Nothing in the contract spells out any intent to confer a direct benefit upon the Plaintiff or his employer to allow them to enforce this day work contract. And I couldn't find a single case under Texas or Louisiana law where this had occurred, where a subcontractor had been allowed to enforce the day work contract. And that Ancona opinion, it's a little bit different than this situation in that there, the injured employee is attempting to file a breach of contract action, and the court there says you're clearly not a third-party beneficiary. Is that in your brief? It's not, Your Honor. Well, you need to give a piece of paper to the courtroom deputy with the citation. I will, Your Honor, and I apologize. I found it last night. Yeah. I will file something. As to the Chapter 95 issue, so I think it's clear that under Texas or Louisiana law, Mr. Mabry is not a third-party beneficiary. Since he did bring up that he's conceded under Texas law, just looking at the cases that he cited in his reply brief, he indicates that we have not adequately responded to those. I'll just say I've read all of those cases, and most of them the court actually finds that there is no third-party beneficiary. None of the contracts are oil and gas contracts. One, the Paul v. Louisiana case is a drug screen case. They found that it was not a third-party beneficiary. The person who was actually getting the drug screen was not a third-party beneficiary of the contract between the employer and the drug screener. So our situation is even more tangentially removed from that, and under Louisiana law that was found to not be a third-party beneficiary situation. Joseph v. Hospital Service District there, the court also found that there was no provision in the contract which established that he was a third-party beneficiary. Dugas v. Thompson also, the court said it's not clear. There's not a clear link. Duck v. Hunt Oil, that's the one case where they did find that someone was a third-party beneficiary, but it's a very different situation from here. It was a subsequent purchaser agreement, so it involved someone who was an environmental issue on property and someone that had purchased the property after the initial buyer, and there was some language in the initial contract about who was going to be responsible for cleanup costs. Clearly that's not applicable here. As to the Chapter 95 issue, I'm sure the court is familiar with Chapter 95, so I'm not going to go through that analysis, but I do think it's important to note that Chapter 95 clearly does apply. A plaintiff has not argued either at the district court level or on appeal that it does not apply. So then at that point the only issue becomes was there evidence of control or was there evidence of actual knowledge. I think here the evidence is clear, that there was no evidence that BHP controlled Mabry's work at the time of the incident. There was also no evidence that BHP had actual knowledge of the condition resulting in Mr. Mabry's injury, and I don't think that's necessarily been contested. An independent contractor, Mr. Mabry, has to prove that the operator controlled his work. Clearly we've established that in our brief that BHP did not have contractual control. The contract specifically states that the independent contractor, which would have been Stage 3, would have been responsible for supervision and control of its own employees. There also has to be an exercise of actual control by BHP, which the evidence shows in Mabry testified that BHP and its men did not control the details of his work. So I think there also has to be actual knowledge in order for a plaintiff to have proved his case. There's no evidence that BHP knew about the mud near the specific Stage 3 equipment. So I think the evidence was clear and the summary judgment was properly granted for BHP. The last issue is the HPIDC motion for summary judgment. Mr. Mabry brought premises liability claims against HPIDC, and the district court addressed that in its order. So our initial argument in our summary judgment motion was that HPIDC neither owned nor operated the premises. I think that was the first grounds that the trial court granted summary judgment on. I don't think we need to go past this point because— I do, too. You don't? I do not think we need to go past that point. Okay, because I think it's pretty evident that he never established that they owned or operated the premises. Does the court have any questions for me, then? I guess not. Thank you. Okay, thank you. All right, Mr. Jordan. Your Honors, I'd like to just address a couple of things about the knowledge. If you look at the excerpts of tab four, there's an exhibit here where it shows that Mr. Mabry filled out a report before the accident ever happened, making the operator aware of the condition of the spillage of the drilling fluid on the premises. The next exhibit was produced by the Petrohawk safety people, and relating to how there was improper layout, there was inadequate safety measures taken on the drill site itself, and that document was produced by no help from the plaintiff. It was done by the safety people that worked for Petrohawk. In addition, the mud clearly is drilling mud. It's not just rainy conditions or mud. It's black mud. And Mr. Latour, who was the company man, said, Yep, at 4,000 feet, we changed over from water-based drilling mud to oil-based drilling mud. And the pictures show it was everywhere. They admitted in their deposition, they dug a trench a foot deep and a foot wide to catch drilling mud that they anticipated would be all over the drill site. And it got so filled up with scavenger, my client couldn't see it. That's when he stepped in and fell and broke his arm. And he still needs surgery. So, there's genuine issues of material fact that would preclude summary judgment even under Texas law. But particularly under Louisiana law, if you govern and interpret and apply Louisiana law, the motions for summary judgment should be reversed. Thank you. All right. Thank you very much. Court will be in recess until...